IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| TARA NICOLE MUELLER, on behalf of herself and all others similarly situated,<br>Plaintiff,<br>v.<br>Whiteflash Inc.,<br>Defendant. | CLASS ACTION COMPLAINT<br><br>Case No. 1:26-cv-2250 |

**COMPLAINT**

1) Plaintiff, TARA NICOLE MUELLER (hereinafter "Mueller"), brings this action on behalf of herself and all other persons similarly situated (hereinafter "Class Members") against Whiteflash Inc. (hereinafter "Defendant"), and states as follows:

2) Mueller is a visually-impaired and legally blind person who requires screen-reading software to access website content using her computer. Mueller uses the terms "blind" or "visually-impaired" to refer to individuals who meet the legal definition of blindness, including individuals whose best-corrected central visual acuity is 20/200 or less in the better eye or whose visual field in the better eye is limited to 20 degrees or less. Some individuals who meet this definition have limited vision; others have no vision.

3) According to the U.S. Census Bureau's 2024 American Community Survey, as summarized by the American Foundation for the Blind, approximately 9 million people in the United States, including approximately 285,000 individuals living in the State of Indiana, are visually impaired.

4) Mueller brings this civil rights action against Defendant for its failure to design, construct, maintain, and operate its Website https://www.whiteflash.com/ (hereinafter "Website"

or “the Website”) to be fully accessible to and independently usable by Mueller and other blind or visually-impaired individuals. Defendant is denying blind and visually impaired individuals throughout the United States equal access to the goods and services Defendant provides to its non-disabled customers through the Website. Defendant’s denial of full and equal access to its Website, and therefore denial of its products and services offered, is a violation of Mueller’s rights under the Americans with Disabilities Act (the “ADA”).

5) The Website provides to the public a wide array of the goods, services, price specials and other programs offered by Defendant. Yet, the Website contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the Website. In fact, the access barriers make it impossible for blind and visually-impaired users to even complete a transaction on the Website. Thus, Defendant excludes the blind and visually-impaired from the full and equal participation in the growing Internet economy that is increasingly a fundamental part of the common marketplace and daily living. With technological advances in recent years, assistive computer technologies now play an essential role in enabling blind and visually impaired individuals to access digital content, allowing blind and visually-impaired individuals to fully and independently access a variety of services.

6) Blind and visually impaired individuals often rely more heavily on online platforms due to mobility-related barriers. The lack of an accessible website means that visually impaired individuals are excluded from fully experiencing and transacting on the Website and from purchasing goods or services from the Website.

7) Despite readily available accessible technology, such as the technology in use at other heavily trafficked retail websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text, Defendant has failed to code core functions of the Website,

including site navigation and Cart updates confirmation, so that they can be perceived and operated by screen-reader users. Defendant's sighted customers can independently browse, select, and buy online without the assistance of others. However, visually impaired individuals cannot independently complete a purchase on the Website without the assistance of a sighted person

8) By failing to make the Website accessible to visually impaired individuals, Defendant is violating basic equal access requirements under federal law.

9) Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired individuals.

10) Mueller visited the Website on or about June 16, 2026, and most recently on or about October 6, 2026, with the specific intent to purchase a pair of earrings on the Website. However, the access barriers described herein continuously prevented Mueller from completing that purchase independently. Mueller suffered, and continues to suffer frustration, humiliation, and discrimination as a direct result of Defendant's failure to provide a Website that is fully accessible to, and independently usable by, blind and visually-impaired individuals, in violation of her rights under the ADA.

11) Mueller is currently, and has been continuously, deterred from returning to the Website by her actual knowledge that the barriers she personally encountered on or about June 16, 2026, and again on or about October 6, 2026, remain unremedied. This ongoing deterrence is itself an injury-in-fact independent of any future visit, because Mueller cannot know whether the Website has become accessible without either attempting to use it again, which she reasonably will

not do given her past experiences, or obtaining assurance through this litigation that the barriers have been cured. Notwithstanding this deterrence, Mueller intends to and will return to the Website to purchase diamond earrings within thirty (30) days of Defendant's remediation of the access barriers described herein, and periodically thereafter. This concrete and particularized injury – both from Mueller's past inability to complete a purchase and her ongoing deterrence from returning – is actual, imminent, and redressable by the injunctive relief sought herein.

12) Because Defendant's Website is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Mueller seeks a permanent injunction to cause a change in Defendant's policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

13) This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 because Mueller's claims arise under the laws of the United States, specifically Title III of the ADA, and 42 U.S.C. § 12181 et seq., as Mueller's claims are brought pursuant to 42 U.S.C. § 12182 and are enforceable through the remedies, procedures, and rights set forth in 42 U.S.C. § 12188.

14) The Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in Indiana and has sufficient minimum contacts with this State to satisfy due process and the Indiana long-arm provision, Indiana Trial Rule 4.4(A). Defendant operates a publicly available interactive commercial Website through which it markets, sells, and ships its precision-cut diamonds, designer jewelry items, and certified natural, lab-grown diamonds and related products to consumers throughout the United States, including to consumers located in Indiana and in this District, on a continuous and

systematic basis as part of its ordinary retail operations. Mueller's claims arise directly out of Defendant's Indiana directed-conduct: Mueller, an Indiana resident, attempted to purchase Defendant's products from Indiana through the Website, and was denied full and equal access as a direct result of the barriers described herein. The exercise of jurisdiction over Defendant comports with traditional notions of fair play and substantial justice, as Defendant has continuously and deliberately targeted Indiana consumers as part of its ordinary course of business.

15) Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Mueller attempted to use the subject Website within this Judicial District.

16) Defendant regularly conducts business in the State of Indiana, including in this District. Defendant has committed, and continues to commit, the acts or omissions alleged herein in the Southern District of Indiana causing injury and violated rights the ADA prescribes to Mueller and to other blind and other visually impaired consumers. A substantial part of the acts and omissions giving rise to Mueller's claims occurred in this District: on separate occasions, Mueller has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Hamilton County. These access barriers that Mueller encountered have caused a denial of Mueller's full and equal access in the past and now deter Mueller on a regular basis from accessing the Defendant's Website in the future.

17) The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

18) This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

19) This lawsuit is aimed at providing visually impaired users like Mueller a full and equal experience.

**THE PARTIES**

20) Mueller is and has been at all relevant times a resident of Hamilton County, State of Indiana.

21) Mueller is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(l)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 et seq. Her visual impairment substantially limits the major life activity of seeing. Mueller cannot use a computer without the assistance of screen reader software. Mueller has been denied the full enjoyment of the facilities, goods and services of the Website as a result of access barriers on the Website.

22) Defendant, a Texas Corporation, does business in this State with its principal place of business located at 2150 Town Square Place, Suite 330, Sugar Land, TX 77479, being represented by its registered agent, Debi Wexler, 11333 Chimney Rock, Houston, TX 77035.

23) Defendant provides to the public the Website, which provides consumers access to an array of goods and services, including, the ability to purchase a wide selection of fine jewelry and diamond jewelry, including earrings, rings, necklaces, bracelets, and pendants. Consumers across the United States use Defendant's Website to purchase fine jewelry and diamond items. Defendant's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7), as it is a sales establishment operated by Defendant that offers goods and services to the public in the ordinary course of Defendant's retail business, regardless of

whether that business is conducted through a physical storefront. The inaccessibility of the Website has deterred, and continues to deter, Mueller from making an online purchase of diamond earrings.

## NATURE OF THE CASE

24) The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, and researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

25) Visually impaired individuals access websites by using keyboards in conjunction with screen-reading software which vocalizes visual information on a computer screen. Except for a visually impaired person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a visually impaired person can independently access the Internet. Unless websites are designed to allow for use in this manner, visually impaired individuals cannot fully access the information, products and services offered online.

26) For screen-reading software to function properly, website content must be capable of being rendered accurately into text. If the website content is not capable of being rendered into text, the visually impaired user is unable to access the same content available to sighted users.

27) Visually impaired users of Windows-enabled computers and devices have several screen-reading software programs available to them. Job Access With Speech, otherwise known as "JAWS", is currently one of the most popular, and downloaded screen-reading software programs.

28) The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired persons. These guidelines are widely followed by many

large business entities and government agencies to ensure their websites are accessible. Courts and the Department of Justice have frequently looked to the WCAG 2.2 guidelines as a benchmark for website accessibility. The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: adding alt-text to graphics, ensuring that all functions can be performed using a keyboard and not just a mouse, ensuring that image maps are accessible, and adding headings so that visually impaired persons can easily navigate the site. Without these very basic components, a website will be inaccessible to a visually impaired individual using a screen reader. Furthermore, websites must be accessible to users of all proficiency levels, including screen-reader users with minimal technical experience of screen-reading software and need to be able to work with all browsers. Finally, websites need to be continually updated and maintained to ensure that they remain fully accessible.

## FACTUAL ALLEGATIONS

29) Defendant controls and operates the Website in the State of Indiana and throughout the United States.

30) The Website is a commercial platform through which consumers can browse and purchase products and services for online sale. The online store allows the user to view precision-cut diamonds, designer jewelry items, and certified natural and lab-grown diamonds, make purchases, and perform a variety of other functions.

31) Among the features offered by the Website are the following:

a) Consumers may use the Website to connect with Defendant on various social media platforms, including Facebook, Twitter (X), Pinterest, Instagram, YouTube, and TikTok;

b) An online store that allows customers to purchase a selection of fine jewelry and diamond jewelry items, including engagement rings, wedding rings, earrings, necklaces, bracelets, pendants, and other products for delivery to their doorsteps; and

c) Learning about shipping and return policies, reading customer reviews, exploring educational resources, and learning about the company, amongst other features.

32) This case concerns Defendant's policy and practice of denying visually impaired individuals' access to the goods and services offered by the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, visually impaired individuals have been and are being denied equal access to Defendant as well as to the numerous goods, services and benefits offered to the public through the Website.

33) Defendant denies the visually impaired users' access to goods, services and information made available through the Website by preventing them from freely navigating the Website.

34) The Website contains access barriers that prevent free and full use by Mueller and visually impaired individuals using keyboards and screen-reading software. These barriers are pervasive and include but are not limited to: ambiguous link texts, changing of content without advance warning, unclear labels for interactive elements, inaccessible drop-down menus, and redundant links where adjacent links go to the same URL address.

35) The Website also lacks prompting information and accommodations necessary to allow visually impaired customers who use screen-readers to locate and accurately interact with online content and purchasing features. Due to the lack of adequate accessibility accommodations, Mueller and visually impaired customers cannot effectively navigate the Website, review product information, or independently complete online purchases.

36) When visiting the Website on or about June 16, 2026, and more recently on or about October 6, 2026, using the JAWS screen-reader and keyboard, Mueller encountered accessibility barriers that denied her full and equal access to the Website and prevented her from completing her intended purchase. The barriers described are not isolated or transient defects but are structural features of the Website's design and coding that affect core functions of the Website, including but not limited to: interactive navigation, redundant product links, and product browsing, which render the Website inaccessible to, and not independently usable by, blind and visually-impaired persons who use screen-reader software, including Plaintiff and the members of the putative class she seeks to represent.

a) Homepage content is sectioned with headings but lacks proper markup, hindering section identification. As a result, blind users cannot access the heading structure like sighted users, making efficient navigation of the home page difficult;

b) Interactive elements on the Website cannot be focused using the Tab key. The Website does not provide helpful instructions on how to access the interactive elements using arrow keys, making it difficult for blind users to identify and access those elements;

c) Sub-menu elements with drop-down menus are inaccessible via keyboard. Blind users cannot interact with the sub-menus using the Tab or arrow keys, creating device-specific functionality that makes the Website inaccessible to blind users;

d) Blind users are unable to activate several interactive elements using the Enter or Spacebar keys. The only mechanism for viewing certain items is the mouse, preventing blind users from independently accessing the available content;

e) Blind users encounter repetitive link texts that are announced separately from their surrounding context. These links do not provide helpful information and can disorient blind users;

f) Blind users are forced to repeatedly tab through elements with the same destination. The link text of products conveys similar information and leads to the same destinations as the interactive images above the links, creating redundant navigation;

g) Blind users can become disoriented when an automatic pop-up window appears on the webpage. Because the visual context changes without warning, blind users have difficulty knowing when an automatic change in context has occurred, such as when a new window appears;

h) Links open new windows without providing prior warning. As a result, blind users may unsuccessfully attempt to use the “Back” function of the browser to return to the previous page, causing confusion and disorientation;

i) Interactive elements on the webpage have inappropriate and non-descriptive names. As a result, blind users cannot identify the purpose of the interactive elements;

j) After a selected item is added to the Cart, its value information is not announced. As a result, blind users do not know whether the product selection was successful or how many items have been added to the Cart.

37) Consequently, visually impaired customers are essentially prevented from purchasing any items on the Website.

38) The Website cannot be used to complete a transaction by keyboard alone. Yet, it is a fundamental tenet of web accessibility that for a web page to be accessible to Mueller and visually impaired people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Mueller and visually impaired users cannot use a mouse because manipulating the mouse is a visual activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design, which cannot be operated by keyboard alone to complete a transaction, denies Mueller and visually impaired customers the ability to independently navigate and/or make purchases on the Website.

39) Due to the Website's inaccessibility, Mueller and visually impaired individuals must in turn spend time, energy, and/or money to make their purchases at traditional brick-and-mortar retailers. Some visually impaired customers may require a driver to get to the stores or require assistance in navigating the stores. By contrast, if the Website was accessible, a visually impaired individual could independently investigate products and make purchases via the Internet as sighted individuals can and do. According to WCAG 2.2 Guideline 4.1.2 'Name, Role, Value', all user interface components require a programmatically determinable name. The accessible name of interactive elements (buttons, check boxes, radio buttons, etc.) enables compatibility with assistive technology, such as screen readers, screen magnifiers, and speech recognition software, used by people with disabilities. In case the accessible name is not provided, some users will not be able

to identify the purpose of the form control. Thus, Defendant's inaccessible design deprives Mueller and visually impaired customers of the opportunity to make purchases on the Website on their own.

40) The Website thus contains access barriers that deny full and equal access to Mueller, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Website in the State of Indiana and throughout the United States.

41) Mueller attempted to complete a purchase on the Website. She was searching online for earrings and decided to look for a company that would offer attractive, high-quality diamond jewelry with customizable options. On or about June 16, 2026, during her online search, she discovered Defendant's website, Whiteflash.com, which offered a selection of fine jewelry items and diamond pieces, including earrings in a variety of styles and designs. To learn more, Mueller reviewed the Website's jewelry offerings and became particularly interested in stud earrings because they were attractive, appeared to be of better quality than similar earrings available at local stores, and were highly customizable. She also found Defendant's pricing appealing and was interested in its quality and warranty. Encouraged by the Website's selection and customization options, she decided to explore the Website with the intention of making a purchase. However, while navigating the Website on or about June 16, 2026, and again on or about October 6, 2026, using a screen reader and keyboard, she encountered multiple accessibility barriers that hindered her ability to complete the purchase independently. Specifically, the sub-menu items within the navigation menu were not accessible by keyboard, preventing her from independently exploring available product categories. Additionally, she encountered repetitive "View Details" links that lacked sufficient context to identify what they were associated with. As a result, she failed to determine the purpose of each link and navigate the page efficiently. Furthermore, after

unintentionally adding the selected item to the Cart, its value information was not announced, making it impossible for Mueller to confirm her selection and proceed with her purchase. These access barriers rendered the Website inaccessible to, and not independently usable by, blind and visually impaired individuals.

42) Mueller specifically prefers Defendant's earrings and related fine jewelry Defendant offers over other available alternatives. Mueller has purchased earrings before and, on or about June 16, 2026, and again on or about October 6, 2026, visited Defendant's Website while looking for stud earrings that appealed to her. Mueller was particularly interested in Defendant's earrings because she found them very attractive, believed they appeared to be of a better quality than similar earrings available at local stores, and appreciated that they were highly customizable. She had not seen similar earrings at local stores and therefore, considered Defendant's selection particularly appealing. Mueller also values Defendant's quality, warranty, pricing, and selection, which contributed to her preference for purchasing from Defendant. As a consumer shopping online, Mueller found the Website appealing because it provided more customization options, and a greater variety of choices than she believed were available at physical stores. Mueller became interested in purchasing earrings from Defendant because she wanted to wear them for special occasions or work and believed Defendant offered products that suited her preferences. Mueller is also interested in Defendant's other offerings, including other earrings and jewelry available through the Website. Mueller's interest is not confined to a single purchase: she expects to purchase earrings and other jewelry in the future. Mueller intends to return to the Website and purchase earrings if she can access the Website independently. She has been unable to do so while the barriers described herein remain on the Website. The barriers Mueller encountered arise during her actual attempt to browse and purchase products and prevent her from independently accessing the

Website's content and functionality. Mueller has not returned to the Website since October 6, 2026, because she was frustrated that she could not complete her purchase, but she remains willing to check the Website again in the future. She does not know whether the accessibility barriers have been fixed and has received no indication that they have been remediated. If the Website were made accessible, Mueller would return and attempt to complete her purchase within approximately one month and would continue to explore Defendant's other jewelry offerings.

43) The discriminatory treatment Mueller experienced is reasonably likely to continue absent judicial intervention. Since Mueller's most recent visit, Defendant has not represented to Mueller, the Court, or to the public that it has remediated, or intends to remediate the access barriers described herein. Upon information and belief, Defendant's Website continues to lack a remediation timeline, or other indication that Defendant has taken steps to bring the Website into compliance with the ADA. Absent an order from this Court, Mueller has no assurance that the barriers she personally encountered will be corrected, and her injury will continue.

44) Mueller has articulated a genuine, product-specific interest in Defendant's 14k White Gold 4-Prong Diamond Basket Earrings and in the related fine jewelry items offered by Defendant. That interest is rooted in her appreciation for attractive, high-quality earrings, her desire for customizable jewelry, and her intention to wear diamond earrings for special occasions. Mueller's interest exists wholly independent of, and predates, this litigation, as described above.

45) As described above, Mueller has actual knowledge of the fact that Defendant's Website contains access barriers that render the Website inaccessible to, and not independently usable by, visually impaired individuals.

46) These barriers to access have denied Mueller full and equal access to, and enjoyment of the goods, benefits, and services of the Website.

47) Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a) constructed and maintained a website that is inaccessible to visually impaired Class Members with knowledge of the discrimination; and/or

b) constructed and maintained a website that, despite being sufficiently intuitive for sighted users, is inaccessible to visually impaired Class Members; and/or

c) failed to take action to correct these access barriers in the face of substantial harm and discrimination against visually impaired Class Members.

48) Defendant utilizes standards, criteria, or methods of administration that have the effect of discriminating against or perpetuating the discrimination of others.

49) Because of Defendant's denial of full and equal access to, and enjoyment of, the goods, benefits, and services of Whiteflash.com, Plaintiff and the class have suffered an injury-in-fact which is concrete and particularized and actual and is a direct result of Defendant's conduct.

## CLASS ACTION ALLEGATIONS

50) Mueller, on behalf of herself and all others similarly situated, seeks certification of the following nationwide class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by the Website, during the relevant statutory period."

51) There are common questions of law and fact common to the Class, including without limitation, the following:

(a) Whether the Website is a "public accommodation" under the ADA;

(b) Whether Defendant, through its Website, denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to individuals with visual disabilities in violation of the ADA; and

(c) Whether Plaintiff and the Class are entitled to declaratory and injunctive relief, and the nature and scope of that relief.

52) Mueller's claims are typical of the Class. The Class, like Mueller, is composed of legally blind individuals who use screen-reading software, and claims that Defendant has violated the ADA by failing to update or remove access barriers on its Website so it can be independently accessible to the Class.

53) Mueller will fairly and adequately represent and protect the interests of the members of the Class because Mueller has retained and is represented by counsel competent and experienced in complex class action litigation, and because Mueller has no interests antagonistic to the members of the class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Mueller and the Class as a whole.

54) Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class Members clearly predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

55) Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by individuals with visual disabilities throughout the United States.

**FIRST CAUSE OF ACTION**
***Violation of the Americans with Disabilities Act ("ADA")***

56) Mueller, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

57) Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a) provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12182(b)(1)(D)(i).

58) The Website is a place of public accommodation within the definition of 42 U.S.C. § 12181(7).

59) Defendant is subject to Title III of the ADA because it owns and operates the Website.

60) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(i), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

61) Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(ii), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an

opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

62) Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

63) In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(iii), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

64) There are readily available, well-established guidelines on the Internet for making websites accessible to the blind and visually-impaired. These guidelines have been followed by other business entities in making their websites accessible, including but not limited to ensuring adequate prompting and focus order. Incorporating the basic components to make their Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

65) The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 et seq., and the regulations promulgated thereunder. Patrons of Defendant who are visually

impaired have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

66) Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67) As such, Defendant discriminates, and will continue in the future to discriminate against Mueller and members of the proposed Class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 et seq. and/or its implementing regulations.

68) Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Mueller and members of the proposed Class will continue to suffer irreparable harm.

69) The actions of Defendant were and are in violation of the ADA, and therefore Mueller invokes her statutory right to injunctive relief to remedy the discrimination.

70) Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Mueller, requests relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully demands judgment in favor of Plaintiff and the class and against Defendants as follows:

a) A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.;

b) A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website into full compliance with the requirements set

forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by visually impaired individuals, including but not limited to conformance with WCAG 2.2 Level AA standard, and further requiring Defendant to maintain such compliance on an ongoing basis, including with respect to any future updates, changes, or modifications to the Website;

c) An order requiring Defendant to submit to the Court and Plaintiff's counsel, within sixty (60) days of entry of judgment, and annually thereafter for a period of three (3) years, a written report detailing the specific steps taken to achieve and maintain ADA compliance, accompanied by an audit conducted by a qualified independent accessibility consultant;

d) A declaration that Defendant owns, maintains, and operates the Website in a manner that discriminates against the visually impaired and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, et seq.;

e) An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2), appointing Mueller as Class Representative, and her attorneys as Class Counsel;

f) An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 42 U.S.C. § 12205;

g) An order retaining jurisdiction over this matter for a period of no less than three (3) years following entry of final judgment to ensure Defendant's compliance with the injunctive relief ordered herein, and authorizing Plaintiff to seek enforcement

of the Court's orders through contempt or such other remedies as may be available; and

h) Such other and further relief as this Court deems just and proper.

Dated: October 16, 2026

Respectfully Submitted,

EQUAL ACCESS LAW GROUP, PLLC

**/s/ Jason B. Marshall**
By: Jason B. Marshall
IN Bar No.: 36889-49
4903 Avenue N
Brooklyn, NY 11234
jmarshall@ealg.law
(463) 777-4196
*Attorneys for Plaintiff*